IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **NBH BANK, N.A.**, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § Civil Action No. **3:12-CV-2466-L** |
| | § |
| **TIMOTHY L. BARTON, JMJ** | § |
| **DEVELOPMENT, LLC and JMJ** | § |
| **BILTMORE, LLC**, | § |
| | § |
| Defendants. | § |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's Motion for Summary Judgment (Doc. 29), filed July 15, 2013; Defendants' Response to NBH Bank's Motion for Summary Judgment with Objections and Motion to Strike (Doc. 35), filed August 16, 2013; and Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Summary Judgment (Doc. 37), filed August 30, 2013. After careful consideration of the motions, responses, replies, record, and applicable law, the court **grants** Plaintiff's Motion for Summary Judgment, and **overrules in part** and **sustains in part** Defendants' Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence.

**I.    Procedural and Factual Background**

NBH Bank, N.A. ("NBH" or "Plaintiff") brought this breach of contract claim against Defendants Timothy L. Barton ("Barton"), JMJ Development, LLC, and JMJ Biltmore, LLC (collectively, "Defendants") on July 20, 2012, seeking to recover on guaranties executed by Defendants. Pl.'s Original Compl. ¶ 13. On November 30, 2006, NBH and Nashville Biltmore, L.P. ("Borrower") entered into a Loan Agreement. *Id*. ¶ 7. Borrower executed a Promissory Note that

secured a Deed of Trust, Security Agreement, Assignment of Rents, and a Fixture Filing granted by Borrower in favor of NBH. *Id.* After several modifications, the maturity date for full repayment of the entire principal balance and unpaid interest to NBH by Borrower was set for July 1, 2012. *Id.* ¶ 8. Defendants executed Guaranty Agreements with the Loan Agreement and the Note. *Id.* ¶ 9. Plaintiff contends that within the modifications to the Loan Agreement, Defendants confirmed their obligations under the Guaranties and also waived any defense or cause of action they could assert arising under the Loan Documents. *Id.* Plaintiff alleges that after Borrower defaulted on the Note and Loan Agreement, Defendants became liable under the guaranties for Borrower's payment obligations for the debt and have failed to satisfy their obligations under the guaranties. *Id.* ¶ 13. Plaintiff seeks damages in addition to attorney's fees and court costs. *Id.* ¶ 15.

In their Amended Answer, Defendants assert affirmative defenses based on estoppel and failure to perform conditions precedent to suit. Def.'s First Am. Answer ¶¶ 18, 19. Additionally, Defendant brought a counterclaim based on promissory estoppel. *Id.* ¶¶ 20-23. Defendants allege that NBH made certain representations and promises to them through modifications to the Note and Loan Agreement regarding a bond offering. Defendants argue that "[h]ad NBH not falsely promised and represented that it would diligently and timely approve the [bond offering] arrangement," the guarantors and borrowers could have had an opportunity to seek other financing or investors to help them make their payment. Def.'s Br. in Supp. of Resp. to NBH Bank's Mot. for Summ. J. ("Response") at 7. On July 5, 2013, the court dismissed Defendants' counterclaim of promissory estoppel; however, the affirmative defenses of estoppel and failure to perform conditions precedent to suit are still before the court.

In addition to their affirmative defenses, Defendants also argue that: (1) the most recent version of the loan agreement (the Seventh Loan Modification Agreement ("Seventh Modification")) contains ambiguities; (2) there is a question of fact as to whether the February 6, 2012 Seventh Modification was a contract since Plaintiff allegedly re-used Defendants' prior signatures from an earlier draft; (3) the borrower's bankruptcy filing came after Plaintiff's acceleration of the note and the Seventh Modification and therefore the filing could not constitute an event of default; and (4) Plaintiff's claim for attorney's fees is excessive and controverted.

## II.    Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus.*

*Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.* (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

**III.     Analysis**

    **A.     Overview**

Plaintiff moves for summary judgment on its breach of contract claim, its request for attorney's fees and court costs, and on Defendants' affirmative defenses. Plaintiff asserts that Defendants are obligated to satisfy Borrower's indebtedness to NBH under the Note and Loan Agreement. Plaintiff contends that Defendants have not complied with their obligations under the Guaranties while Plaintiff has performed all of its obligations under the Guaranties, the Note, and the Loan Agreement. Plaintiff also contends that all conditions precedent to its right to recover under the Guaranties have been performed and satisfied.

Defendants assert two affirmative defenses: estoppel and failure to perform conditions precedent to suit. In response, Plaintiff emphasizes Defendants' alleged waiver of any defense or cause of action that could arise under the Loan Documents. Before the court can examine these defenses and responses, it must first address whether the February 6, 2012 Seventh Modification is a valid contract.

    **B.     Validity of the Seventh Modification**

Since Plaintiff bears the burden of proof on its breach of contract claim, it must establish that there is no genuine dispute of material fact as to each of the essential elements of the claim or defense to warrant summary judgment in its favor. Plaintiff's breach of contract claim centers on the content of the final operative version of the Loan Agreement. Plaintiff contends that the final operative version is the Seventh Modification, which, according to Plaintiff, was signed on February 6, 2012. Pl.'s Br. in Supp. of Its Mot. for Summ. J. ¶ 8. The contents of the Seventh Modification are of course essential in determining the liability of Defendants given that it contains a waiver of

any defense or cause of action, a detailed statement about the bond issuance that Defendants were seeking, and information regarding the maturity date of the loan. Therefore, the court's analysis of Defendants' affirmative defenses first depends on the content of the final enforceable agreement. While Plaintiff contends that the Seventh Modification is enforceable, Defendants argue that the agreement is not operative because Plaintiff used their prior signatures from an earlier draft for the February 6, 2012 final draft. Defendants contend that Barton signed the December 27, 2011 "draft" modification agreement for all Defendants and that the same signature page appears on the February 6, 2012 "final" modification agreement. Resp. ¶ 24.

Plaintiff, on the other hand, argues that Defendants recycled their own signatures from the December 27, 2011 draft. Plaintiff contends that Defendants redelivered their signatures from the December 27, 2011 draft to Plaintiff on January 18, 2012, in connection with a later draft. Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Summ. J. ("Reply") ¶ 11. Plaintiff contends that Defendants had still failed to perform two conditions precedent to the effectiveness of the Seventh Modification: (1) "physical delivery of an original acknowledgment and agreement signed by the Borrower and IDB for the benefit of NBH that no Bonds will be issued during the term of the Loan without NBH's written approval"; and (2) "payment of $380,286.00 as an interest reserve through April 30, 2012." *Id*. Plaintiffs also note that revisions were still being made as of January 17, 2012. *Id*. Plaintiff then states that the conditions precedent were finally met on February 2, 2012. *Id*. Plaintiff's counsel therefore changed the date that the Seventh Modification was signed to February 6, 2012, and Plaintiff contends that "all remaining terms of the Seventh Modification remained the same as the form delivered to NBH by Defendants on January 18, 2012 (including the effective date and Defendants' signatures)." *Id*. Plaintiff also argues that Defendants' conduct in performing under

**Memorandum Opinion and Order - Page 6**

the terms of the Seventh Modification demonstrates its operativeness in that Defendants sent the $380,286 for interest reserve, delivered the IDB Agreement, and provided updates on the bond sale progress after the Seventh Modification was executed. *Id*. Finally, Plaintiff contends that even if the court finds that the Seventh Modification is not valid, Defendants still breached the contract since the loan would have already matured by its original terms on July 1, 2011. *Id*. ¶ 11 n.5.

The court determines that the February 6, 2012 Seventh Modification is operative. Plaintiff provides evidence demonstrating that Defendants signed a draft of the Seventh Modification on January 18th, 2013.[1] Once Plaintiff confirmed that the conditions precedent were met by Defendants, it took the exact same draft of the Seventh Modification that Defendants signed on January 18, 2012, signed it, and changed the signed date to February 6, 2012. Not only do both drafts have the exact same content, but both drafts also have the same effective date: July 1, 2011. That Plaintiff waited to sign the draft and updated the date of its signature does not invalidate the agreed-upon modification, as there was no substantive difference between the February 6, 2012 draft and the January 18, 2012 draft. Nothing in the record even intimates that Defendants objected to the draft signed on February 6, 2012, or that there was no meeting of the minds between the parties. The court has not found any difference, other than the date, between the two documents, and Defendants have not pointed out any difference, other than the date, to the court. To rule as Defendants urge the court exalts form over substance. The remainder of the court's analysis will stem from the content of the February 6, 2012 Seventh Modification ("Final Modification").

---

[1] There is an e-mail, which was sent on January 19, 2012, from Mark Adams (JMJ Holdings) to Kris Dekker (NBH Bank) that attaches the signed copy of the January 18, 2012 draft of the Seventh Modification. App. to Pl.'s Reply to Resp. to Mot. for Summ. J., Ex. A-2, at 8-23.

**Memorandum Opinion and Order - Page 7**

### C.     Waiver of Defenses

#### 1.     *Date of Agreement*

Plaintiff contends that pursuant to the Final Modification's waiver provision, Defendant has waived any defense or cause of action that they may have arising under the Loan Documents. Pl.'s Br. in Supp. of Its Mot. for Summ. J. ¶ 8. The waiver provision states:

> Borrower and Guarantors each further represents and warrants that *as of the date of this Agreement* there are no counterclaims, defenses or offsets of any nature whatsoever to any of the obligations of such parties under the Loan Documents. Borrower and Guarantors each hereby waives, discharges, and releases forever all *existing* rights, claims, defenses cause of action, known or unknown, *now existing*, whether discovered hereafter or not, including but not limited to those related to the Loan which arise from any action or inaction by Lender, and *which occurred on or before the date of this Agreement*, which each may have against Lender or which might affect the enforceability by Lender of its rights and remedies under any of the Loan Documents.

App. to Pl.'s Br. in Supp. of Mot. for Summ. J., Ex. A-10 ("Seventh Loan Modification Agreement") at 156 (emphasis added). The waiver provision makes clear that Defendants are waiving any *existing* claims or defenses at the time the agreement is made.[2] Plaintiff stresses the significance of that language:

> Moreover, Defendants' affirmative defenses relate to purported actions/omissions taken by NBH *prior* to Defendants' execution of the Seventh Loan Modification, wherein Defendants, once again, waived any claim or defense they may have had at that time. Thus, Defendants cannot argue that their defenses were not waived because they accrued after the waiver in the Seventh Modification.

---

[2] Kansas state law applies to the Agreement. The Guaranty Agreement states that it "shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of Kansas." App. to Pl.'s Br. in Supp. of Mot. for Summ. J., Ex. A-12 ("Guaranty Agreement") at 314. Waiver provisions are enforceable under Kansas law. *See, e.g.*, *United States v. Healy*, 923 F. Supp. 1424, 1430 (D. Kan. 1996) (holding that Kansas law does not prohibit waiver of the impairment of collateral defense); *Halpin v. Frankenburger*, 231 Kan. 344, 351 (Kan. 1982) (holding that the provision stating, "Demand, protest, notice of nonpayment and notice of any extensions are hereby expressly waived, and the giving of notice of any making, renewal or extension of any note or indebtedness is also hereby expressly waived" is enforceable). *But see United States v. Kelley*, 890 F.2d 220, 222-223 (10th Cir. 1989) (holding that Kansas' UCC § 9-501(3)(b) prohibits a guarantor from waiving the commercial unreasonableness defense). Additionally, Defendants never contest whether waiver provisions are generally enforceable under Kansas law.

Pl.'s Br. in Supp. of Its Mot. for Summ. J. ¶ 20 (citation omitted) (emphasis in original). Additionally, the Guaranty Agreement states:

> The obligations of Guarantors hereunder are continuing, absolute and unconditional, irrespective of the value, genuineness, validity, regularity or enforceability of any of the Obligations or any of the Loan Documents . . . and irrespective of any other circumstance whatsoever which might otherwise constitute a legal or equitable discharge or defense of a guarantor or surety.

App. to Pl.'s Br. in Supp. of Mot. for Summ. J., Ex. A-13 ("Guaranty Agreement") at 320.

Given the effectiveness of the waiver provision, the next significant factor is determining the "date of the Agreement." For the court's purposes, given the court's previous discussion of the Final Modification's operativeness, the date of the agreement is February 6, 2012.[3]

### 2.    *Affirmative Defenses*

The court now determines whether the affirmative defenses brought by Defendants were existing before February 6, 2012. The court determines that they existed prior to this date.

Defendants first assert the affirmative defense of estoppel. Defendants argue that "[h]ad NBH not falsely promised and represented that it would diligently and timely approve the arrangement, Mr. Barton . . . would have had the opportunity to seek other financing or investors to extinguish the NBH Bank debt while he still had the chance." Def.'s Br. in Supp. of Resp. to NBH Bank's Mot. for Summ. J. ¶ 17. In their Response brief, Defendants state that on July 15, 2011, "NBH Bank had been dragging its feet so inexplicably" that Mr. Barton had to write a letter to NBH's Senior Vice President of its Special Assets Group. *Id*. ¶ 12. Defendants later note that "[d]espite having months to prepare the paperwork after having agreed in principal to the bond

---

[3] Even if the date of the agreement was January 18, 2012, Defendants are still barred from bringing their affirmative defenses, as the defenses that they bring existed at either time. Additionally, based on the language of the provision, the court believes that the waiver provision is triggered by the *date of agreement*, not the retroactive effective date.

**Memorandum Opinion and Order - Page 9**

issuance, NBH Bank did not deliver its first draft of the Seventh Loan Modification Agreement until late December of 2011, some 7 weeks after the conference." Def.'s Br. in Supp. of Resp. to NBH Bank's Mot. for Summ. J. ¶ 14. Defendants' estoppel defense is based on the statement that Plaintiff "effectively prevented Defendant from securing the funding from which it could have ma[de] payment pursuant to the Loan Agreement and Note." Def.'s First Am. Answer to Compl. with Verification ¶ 18. Based on the allegations above, the existence of Defendants' estoppel defense prior to the date of the agreement is manifest. Defendant had an existing right significantly prior to February 6, 2012. Defendants even state that the "unjustified delay" leading up to the Seventh Modification Agreement "frustrated the bond issue; therefore, NBH was the cause of the alleged default." Def.'s Br. in Supp. of Resp. to NBH Bank's Mot. for Summ. J. ¶ 17. Defendants have therefore waived the estoppel affirmative defense.

Similarly, based on the allegations stated above, Defendants waived their affirmative defense of failure to perform conditions precedent to suit. In their Amended Answer, Defendants state that "Plaintiff's dilatory tactics constitute a failure to perform its conditions precedent to filing this lawsuit and, as such, constitute a failure to perform conditions precedent to the filing of the lawsuit." Def.'s First Am. Answer to Compl. with Verification ¶ 19. First, and most importantly, Defendants do not even mention the grounds or an explanation for this affirmative defense in their Response brief. Specifically, there is no explanation as to what conditions for suit Defendants are referring. Additionally, the court has already established Defendants' knowledge of Plaintiff's alleged delay leading up to the Seventh Modification Agreement, and the waiver provision would therefore apply.

### D. Ambiguity of the Seventh Loan Modification Agreement

Defendants contend that the Seventh Loan Modification Agreement is ambiguous in terms of: (1) when the note would actually mature and (2) what duty NBH would have to acquiesce in, support, and accept payment as a result of the bond issuance. Def.'s Br. in Supp. of Resp. to NBH Bank's Mot. for Summ. J. ¶ 21. "Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." *Liggatt v. Employers Mut. Case. Co.*, 273 Kan. 915, 915 (Kan. 2002). Before a contract is determined to be ambiguous, "the language must be given a fair, reasonable, and practical construction." *Id*. Defendants agreed to the Seventh Loan Modification Agreement. If they were concerned about its ambiguity at the time of the signing, Defendants should have waited before executing the agreement. Additionally, the waiver provision prevents Defendants from using any alleged ambiguity as a defense given that they would have known of the purported ambiguity before February 6, 2012, as they first agreed to the content in January 2012.

The maturity date is made quite clear within the Seventh Modification: "The 'Maturity Date' as used and defined in the Note is hereby amended to be July 1, 2012, and any and all references in the Loan Documents to the maturity date of the Loan are hereby amended and modified as necessary to specifically refer to the new 'Maturity Date' of the Note set forth above." App. to Pl.'s Br. in Supp. of Mot. for Summ. J., at Ex. A-10 ("Seventh Loan Modification Agreement") at 153. Therefore, the provisions related to the maturity date in the Seventh Modification are not subject to more than one reasonable interpretation.

Finally, while Defendants state that the Seventh Modification is ambiguous in its terms as to "what duty NBH would have to acquiesce in, support, and accept payment as a result of the bond issuance," the court is unable to identify the specific provision or language in question. Defendants fail to point out the specific language they believe is ambiguous. It appears that Defendants are more concerned with what transpired and the sequence of events rather than the actual language of the Seventh Modification. Moreover, the provision in the Seventh Agreement that most closely pertains to bond issuance is not susceptible to more than one reasonable interpretation.[4] The alleged ambiguity in the Seventh Modification does not create a genuine dispute of material fact and therefore does not provide a reason for denying Plaintiff's Motion for Summary Judgment.

### E.  Timing of Bankruptcy Filing and Acceleration

Defendants contend that since Plaintiff accelerated the Note prior to the bankruptcy, the bankruptcy could not have constituted an event of default. As Plaintiff correctly argues, Defendants do not cite to any legal or evidentiary support for their assertion that events of default can no longer exist after acceleration of a note. Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Summ. J. ¶ 12. The bottom line is that Borrower did not pay its indebtedness when it was due and then filed for bankruptcy protection, both of which are considered an event of default. There is no question that Borrower defaulted on its loans and therefore triggered the liability of Defendants. Therefore, Defendants' contention is not an appropriate ground for denying Plaintiff's Motion for Summary Judgment.

---

[4] The bond issuance is mainly addressed on page four of the Seventh Modification. App. to Pl.'s Br. in Supp. of Mot. for Summ. J., Ex. A-10 at 154.

**Memorandum Opinion and Order - Page 12**

## IV. Evidentiary Objections

Defendants have made several objections and have sought to strike several pieces of testimony from Plaintiff's summary judgment evidence.

*A. Objections to and Motion to Strike Pancost Affidavit, Movant's Appendix Exhibit A*

Defendants make the following objections to the testimony presented in the affidavit of Tracy Pancost, Senior Vice President in the Special Assets Group for NBH Bank:

- (1) Defendants object to paragraph 9, which states that Defendants "waived any defense or cause of action they may have arising under the Loan Documents." Plaintiff objects to this statement because it is a legal conclusion or opinion for which Pancost has not qualified herself to render.

- (2) Defendants object to paragraph 10 which states that Defendants "waived any defense or cause of action they may have against NBH in the Guaranties . . . ." Plainiff objects to this statement because it is a legal conclusion or opinion for which Pancost has not qualified herself to render.

- (3) Defendants object to paragraph 11 which states that "The Guaranties are each valid and enforceable agreements between NBH and Defendants, which served as consideration for NBH's agreement to loan monies to Borrower under the Note and Lone Agreement." Plaintiff objects to this statement because it is a legal conclusion or opinion for which Pancost has not qualified herself to render.

- (4) Defendants object to paragraph 12 which states that "the amount currently due and owing by Borrower under the Note and Loan Agreement, including principal, accrued interest, and other fees as of July 12, 2013 . . . was $8,656,389.90." Plaintiff objects to this statement because it is conclusory and is not supported by any calculation, business records, or supporting documentation.

- (5) Defendants object to paragraph 12 which states that "Defendants, as guarantors of Borrower's obligations under the note and Loan Agreement, are liable for borrowers payment obligations to NBH . . . ." Plaintiff objects to this statement because it is a legal conclusion or opinion for which Pancost has not qualified herself to render.

With respect to objections 1, 2, 3, and 5 above, the court has conducted its own analysis of the legal issues and has reached the same result as espoused in the objected to statements. In other

words, the court reaches this result irrespective of the statements found in Pancost's affidavit.  In the court's analysis in reviewing the record, there are sufficient facts to support Plaintiff's contention that Defendants waived any defense or cause of action, that each Guaranty is valid and enforceable, and that Defendants are liable for Borrower's payment obligations to NBH.  The court reached these conclusions without reliance on Pancost's affidavit.  Therefore, these objections are **overruled as moot**.

Regarding objection 4 above, the court will direct Plaintiff to provide a more up-to-date amount currently due and a more detailed basis for how that amount was reached.  Therefore, this objection is **overruled as moot**.

> B. *Objections to and Motion to Strike Movant's Appendix C, Deposition Excerpts of Tim Barton*

Defendants make the following objection to the testimony presented in the deposition of Tim Barton, corporate representative of Nashville Biltmore, LP (Borrower):

- Defendants object to Plaintiff's misstatement in its Motion, citing the Appendix Exhibit C (Barton's Deposition), which states that "Borrower admitted that it owes the amounts due under the Note and Loan Agreement to NBH." Defendants objected to this statement because the statement was misconstrued and is stated inaccurately.

Defendants explain that the sentence in Plaintiff's Motion states that "Borrower has admitted that it owes the amounts due under the Note and Loan Agreement to NBH."  Pl.'s Br. in Supp. of Its Mot. For Summ. J. ¶ 11.  Plaintiff then cites to several lines within its Appendix:

> Q: Generally speaking, you're not    the debtor is not here saying that NBH Bank is not owed money from the debtor?
> A: Correct.  That's correct.
> Q: Okay.  The bank provided money to the debtor.
> A: That's correct, yes.
> Q: Okay. And the debtor has an obligation to pay it back, correct?

> A: Yes. Hillcrest Bank did, and now we're with NBH and which I guess are the predecessor, so
> Q: The successors?
> A: The successors, yeah.

App. to Pl.'s Br. in Supp. of Mot. for Summ. J., Ex. C at 342-343. Based on the court's evaluation of this dialogue, Defendants acknowledge that a debtor owes money to the bank and in turn acknowledges that Defendants are the debtor. The dialogue, however, does not go far enough to suggest that Barton is admitting to owing the precise "amounts due under the Note and Loan Agreement to NBH." The court therefore **sustains** the objection and strikes the misstatement in Plaintiff's Motion; however, the objection does not affect the court's ruling on Plaintiff's Motion for Summary Judgment.

    *C.*    *Objections and Motion to Strike Movant's Appendix Exhibit D, Affidavit of Brian Mitchell*

Defendants make the following objection to the testimony presented in the deposition of affidavit of Brian Mitchell, the attorney for Plaintiff:

- Defendants object to Mitchell's testimony in paragraphs 6, 7, 8, and 11 which states that the hourly billing rates for himself and other attorneys and paralegals ranges from $230 per hour for a paralegal to $755 per hour for another attorney. Additionally, Mr. Mitchell stated that he "personally reviewed the records showing the services provided and the charges made for such services." Defendants objected to this testimony because it is conclusory and unsupported by necessary documentary evidence.

The court agrees that the testimony presented in the affidavit lacks adequate documentation and is conclusory in many respects. The court will address attorney's fees postjudgment pursuant to Federal Rule of Civil Procedure 54(d)(2). Therefore, the court **sustains** this objection.

   D. *Objections to Motion for Summary Judgment Argument as to Waiver and Statute of Frauds*

Defendants make the following objections as to the arguments used in Plaintiff's Motion for Summary Judgment:

- Defendants object to Plaintiff's argument that Defendants waived their defenses and counterclaims pursuant to the guaranties, as waiver is not plead[ed] so as to support any evidence or findings thereon.

- Defendants object to Plaintiff's argument as to Statute of Frauds under Kansas law since Statute of Frauds is not plead[ed] so as to support any evidence or findings thereon.

Pursuant to Federal Rule of Civil Procedure 8(c)(1), waiver is identified as an affirmative defense. Affirmative defenses must be pleaded under Rule 8. In this instance, the court is not even certain that Rule 8 applies to Plaintiff. In any event, Plaintiff filed its Motion to Dismiss Defendants' Counterclaim on January 23, 2013, addressing the waiver provision. Defendants were aware of Plaintiff's position regarding these matters, were put on notice, and now cannot contend that they are surprised or suffer legal prejudice. Therefore, the court **overrules** the objection.

Additionally, the court's decision is not made based on Statute of Frauds. Therefore, Defendants' objection regarding the argument as to Statute of Frauds is **overruled as moot**.

For these reasons, the court **overrules in part** and **sustains in part** Defendants' objections and motion to strike as herein set forth.

**V.   Attorney's Fees**

In its Original Complaint filed on July 20, 2012, Plaintiff seeks attorney's fees and court costs pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code. Pl.'s Original

Compl. ¶¶ 14, 15. Defendants argue that Plaintiff's claim for attorney's fees is excessive and controverted. Def.'s Br. in Supp. of Resp. to NBH Bank's Mot. for Summ. J. ¶ 27.

As previously stated, the issue of attorney's fees will be addressed postjudgment pursuant to Rule 54(d)(2). Plaintiff must file a motion for attorney's fees in accordance with this Rule with proper documentation and authority. Defendants may file a response in accordance with the Local Civil Rules of this district, and Plaintiff may reply in accordance with such local rules. With respect to documentation, Plaintiff must provide the court with sufficient documentation to determine the necessity of the services rendered and the reasonableness of the hourly rate for services performed. In this regard, time records must be provided to the court. The court will decide the issue of attorney's fees based upon the written submission of the parties, unless it determines that a hearing is necessary on the matter.

## VI.     Principal and Prejudgment Interest

Plaintiff is to inform the court, with supporting documentation, of the amount it contends it is owed by Defendants with respect to principal and prejudgment interest as of October 17, 2013. In doing so, Plaintiff must state with specificity the manner in which it arrives at the principal owed and must set forth the amount of prejudgment interest requested, the rate on which it is based, and the authority for basing it at such rate.

## VII.    Conclusion

For the reasons stated herein, the court **determines** that no genuine dispute of material fact exists as to Plaintiff's breach of contract claim. Accordingly, Plaintiff is entitled to judgment as a matter of law on this claim, and the court **grants** Plaintiff's Motion for Summary Judgment. Further, for reasons previously stated, the court **overrules in part** and **sustains in part** Defendants'

Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence. Judgment will issue by separate document as required by Federal Rule of Civil Procedure 58.

**It is so ordered** this 10th day of October, 2013.

_____
Sam A. Lindsay
United States District Judge